**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **JAMES LACROIX, et al.,** | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 19-cv-11463-DJC |
| v. | ) ) ) ) | |
| **THE BOSTON POLICE DEPARTMENT,** | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                                       **April 15, 2020**

**I.     Introduction**

James LaCroix ("LaCroix"), Renee Payne-Callender ("Payne-Callender"), the Boston Police Patrolmen's Association ("BPPA"), the Boston Police Detectives Benevolent Society ("BPDBS") and the Boston Police Superior Officers Federation ("BPSOF") (collectively, "Plaintiffs") have filed this lawsuit against the Boston Police Department ("BPD") alleging disability discrimination under the Americans with Disabilities Act ("ADA") and handicap and genetic information discrimination under Mass. Gen. L. c. 151B. D. 1.  Specifically, Plaintiffs challenge BPD's policy requiring all officers who return from extended leave, regardless of the nature of their leave, to undergo medical and psychological examinations before returning to service. Id. ¶ 1.  Plaintiffs seek declaratory and injunctive relief as well as monetary damages. Id. at 8. BPD has moved to dismiss.  D. 10.  For the reasons set forth below, the Court DENIES BPD's motion.

**II.     Standard of Review**

Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction. "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)). To determine if the burden has been met, the Court "take[s] as true all well-pleaded facts in the plaintiffs' complaints, scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor." Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009).

A defendant may also move to dismiss for a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). Although detailed factual allegations are not necessary to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 13 (1st Cir. 2011).In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).

**III.    Factual Background**

The following facts are drawn from the complaint, D. 1, and are accepted as true for the consideration of the pending motion. LaCroix is a BPD patrol officer. D. 1 ¶ 4. Payne-Callender

has been a police officer employed by BPD for thirty-three years and has been a BPD detective for the last twenty-one years. D. 1 ¶¶ 5, 15. The BPPA is the collective bargaining agent for all BPD patrol officers, including LaCroix. D. 1 ¶ 6. BPDBS is the collective bargaining agent for all BPD detectives, including Payne-Callender. D. 1 ¶ 7. BPSOF is the collective bargaining agent for all BPD uniformed sergeants, lieutenants and captains. D. 1 ¶ 8.

In March 2016, LaCroix injured his back and right hip while on duty. D. 1 ¶ 10. LaCroix was placed on leave due to his injuries and remained out of work until he was cleared to return by his doctors in December 2018. Id. While he was recovering, LaCroix met with the BPD's occupational physician, Dr. Deiter Affeln ("Dr. Affeln"). D. 1 ¶ 11. The examinations by Dr. Affeln focused on LaCroix's leg and back injuries and he cleared LaCroix to return to light duty work with restrictions on December 4, 2018. Id. Around that time, LaCroix was informed that he would also need to be evaluated by the BPD's psychiatrist, Dr. Brown, before returning to work because he had been on leave for more than six months. D. 1 ¶ 12. LaCroix complied and met with Dr. Brown on December 13, 2018. D. 1 ¶ 13. Dr. Brown approved LaCroix's return to work. Id. LaCroix informed his union, BPPA, of the requirement to meet with Dr. Brown and BPPA questioned BPD about the policy. D. 1 ¶¶ 13, 14. The BPD responded that its "consistent practice is that, prior to returning to full duty, [o]fficers must meet with Dr. Affeln if they have been absent [from] duty for three or more months, and both Dr. Brown and Dr. Affeln if they have been absent for six or more months." Id.

In February 2018, Payne-Callender broke her foot while working and was placed on injury leave. D. 1 ¶ 15. Payne-Callender was eventually cleared to return to work by her doctor on January 11, 2019. Id. While recovering, Payne-Callender occasionally met with BPD's Medically Incapacitated Section regarding her injury. D. 1 ¶ 16. Zelma Greenstein, R.N., cleared Payne-

Callender to return to work in a light duty role on January 18, 2019. Id. After being cleared for light duty work, BPD informed Payne-Callender that she would not be fully cleared to return to work without an evaluation by Dr. Brown. D. 1 ¶ 17. Payne-Callender complied and met with Dr. Brown on January 31, 2019. D. 1 ¶ 19. Dr. Brown cleared Payne-Callender to return to work. Id. During the meeting with Dr. Brown, Payne-Callender questioned whether anyone at the BPD had raised concerns regarding her mental health and Dr. Brown informed her that they had not. Id.

**IV.     Procedural History**

On July 3, 2019, Plaintiffs instituted this action against BPD. D. 1. BPD has now moved to dismiss. D. 10. The Court heard the parties on the pending motion and took the matter under advisement. D. 18.

**V.      Discussion**

**A.     ADA Claim**

BPD argues that Plaintiffs lack standing to pursue the ADA claim because the individual plaintiffs, LaCroix and Payne-Callender, have not articulated any injury suffered and the collective bargaining agents, BPPA, BPDBS and BPSOF, have not sufficiently established associational standing. D. 11 at 4-10. BPD further claims that the complaint must be dismissed because Plaintiffs have failed to establish that they are qualified individuals with a disability under the ADA. Id. at 10-13. Additionally, BPD argues that Plaintiffs bear the burden of establishing that the medical and psychological examinations are not job-related and consistent with business necessity and that Plaintiffs have failed to meet this burden. Id. at 13-14. The Court discusses each argument in turn.

### *1. Standing*

"If a party lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits of the underlying case." United States v. AVX Corp., 962 F.2d 108, 113 (1st Cir. 1992). "The Constitution limits the judicial power of the federal courts to actual cases and controversies." Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (citing U.S. Const. art. III, § 2, cl. 1). "A case or controversy exists only when the party soliciting federal court jurisdiction . . . demonstrates 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends.'" Id. (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)). To establish standing, a plaintiff must show: (1) that they suffered a concrete injury that is actual or imminent; (2) that there is a causal connection between the injury and the conduct alleged; and (3) that the injury can be redressed through a favorable ruling. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Plaintiffs bear the burden to establish standing and "must plead 'sufficient factual matter to plausibly demonstrate [] standing to bring the action[.]" Perez-Kudzma v. United States, 940 F.3d 142, 145 (1st Cir. 2019) (quoting Gustavsen v. Alcon Labs., Inc., 903 F.3d 1, 7 (1st Cir. 2018) (first alteration in original)). To establish associational standing to sue on behalf of their members, the plaintiff unions are required to show that (1) their members would have standing to sue; (2) the interests the suit seeks to protect are "pertinent to the objectives for which the organization[s were] formed" and (3) neither the claim nor the relief requested requires the unions' members to participate in the suit. AVX Corp., 962 F.2d at 116.

As to the individual plaintiffs, BPD argues that they have failed to allege that they have suffered any injury because, despite being required to undergo both physical and psychological examinations, LaCroix and Payne-Callender passed those examinations and were permitted to

5

return to work and the unions have not otherwise alleged that there are any other individual members who have suffered an injury that would confer standing. D. 11 at 6. BPD cites multiple cases in which individuals seeking employment were subjected to pre-employment medical examinations and inquiries. See id. at 6-9. In these cases, job applicants were subjected to various medical inquiries during the hiring process and were eventually denied employment. See, e.g. Chicago Reg'l Council of Carpenters v. Thorne Assocs., 893 F. Supp. 2d 952 (N.D. Ill. 2012); Martino v. Forward Air, Inc., 609 F.3d 1 (1st Cir. 2010); Armstrong v. Turner Indus., 141 F.3d 554 (5th Cir. 1998). Notably, each of these cases was brought under 42 U.S.C. §§ 12112(d)(2)-(3), the provisions of the ADA governing pre-employment examinations and inquiries and employment entrance examinations. Chicago Reg'l Council of Carpenters, 893 F. Supp. 2d at 957; Martino, 609 F.3d at 3; Armstrong, 141 F.3d at 558; see 42 U.S.C. § 12112(d)(2)-(3). Here, Plaintiffs' action is brought under a separate ADA provision related to prohibited examinations and inquiries of current employees. See D. 1 ¶ 24 (citing 42 U.S.C. § 12112(d)(4)).

Despite BPD's contention, the pre-employment cases are not analogous to the present case as, in those cases, the plaintiffs failed to prove that they had suffered an injury due to the alleged illegal inquiries, Chicago Reg'l Council of Carpenters, 893 F. Supp. 2d at 957; Martino, 609 F.3d at 4-5; Armstrong, 141 F.3d at 558, and there was no imminent possibility of further harm. In contrast, courts analyzing claims brought by current employees have held that employees who had not suffered adverse employment actions nevertheless had standing to challenge policies that they alleged violated the ADA's prohibition on medical examinations and inquiries of current employees. See, e.g., Conroy v. N.Y. State Dep't of Corr. Servs., 333 F.3d 88, 94 (2d Cir. 2003) ("agreeing with our sister circuits that a plaintiff need not prove that he or she has a disability unknown to his or her employer in order to challenge a medical inquiry or examination under 42

6

U.S.C. § 12112(d)(4)(a)") and cases cited); Roe v. Cheyenne Mt. Conf. Resort, 124 F.3d 1221, 1229 (10th Cir. 1997) (noting that 42 U.S.C. § 12112(d)(4)(a) applies to all employees, not just qualified individuals with disabilities, and concluding that employee had standing to challenge drug-testing policy even though employer had voluntarily suspended the policy because plaintiff was "threatened with injury in fact").  Here, among other things, Plaintiffs claim that both LaCroix and Payne-Callender lost earning potential as they were required to wait to return to work after being medically cleared so that they could undergo psychological examinations.  D. 14 at 13.  Further, as current employees still subject to the policy, there is an ongoing possibility that LaCroix and Payne-Callender could again be subjected to post-leave examinations.  These alleged injuries are sufficient to establish standing for the individual plaintiffs to challenge the BPD's policy.

The unions have similarly established associational standing to bring the claims in this action.  BPD only addresses the first element of associational standing, arguing that, because Lacroix and Payne-Callender have not suffered an injury, the unions cannot establish that their members have standing to sue.  D. 11 at 6.  Because this Court has determined that LaCroix and Payne-Callender have standing to sue, it follows that the unions have satisfied the requirement that their members have standing to sue.  Further, each of the unions have alleged that "[a] number of [their] members have been subject to physical and psychological examinations unrelated to their leaves."  D. 1 ¶ 6.  If taken as true, which this Court must do regarding a motion to dismiss, those members would also have standing to sue under the ADA's prohibition of medical examinations and inquiries unrelated to business necessity.  See 42 U.S.C. § 12112(d)(4).

The unions have also satisfied the second and third elements of associational standing because, as unions representing the interests of employees of BPD, BPD's employment policies are directly related to the purposes for which the unions were established and the claim and relief

requested do not require participation of the associations' members. See Transp. Workers Union, Local 100 v. N.Y. City Transit Auth., 342 F. Supp. 2d 160, 168 (S.D.N.Y 2004) (ruling that unions had standing to challenge employer's sick leave policy where "the interests that the Unions [sought] to protect . . . the quality of working conditions and conditions of employment – [were] obviously germane to the Unions' purpose").  Consequently, BPPA, BPDBS and BPSOF have standing to bring challenges to BPD's policy requiring medical and psychological examinations of all employees who have been on leave for longer than six months.  See Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J., 283 F. Supp. 3d 72, 78-80 (involving police union's lawsuit against the Port Authority of New York and New Jersey alleging violations of the ADA based on the Port Authority's requirement that police officers undergo annual medical examinations and fitness-for-duty examinations).

### 2.     *Disability Requirement*

BPD argues that, even assuming that Plaintiffs establish standing, they have failed to allege that they are "qualified individuals with disabilities" and, therefore, cannot bring their claim under the ADA.  D. 11 at 10.  BPD cites to a case that references the general anti-disability language of the ADA in 42 U.S.C. § 12112(a), which states that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability."  Id. (citing O'Neal v. City of New Albany, 293 F.3d 998, 1007 (7th Cir. 2002)).  Notably, the court in O'Neal considered a claim brought pursuant to 42 U.S.C. § 12112(d)(3), which applies to examinations that an employer required after an offer of employment, but prior to an applicant commencing work for the employer.  O'Neal, 293 F.3d at 1008.  Further, the court in O'Neal did not determine that the plaintiff was required to show that he had a disability to bring a claim under the ADA, noting that, although the Seventh Circuit had

not yet considered the issue, "several of [its] sister circuits . . . have held that in general a plaintiff need not show disability to sue for medical testing violations under § 12112(d)."

Here, Plaintiffs claim is brought pursuant to 42 U.S.C. § 12112(d)(4), which prohibits, in part, "inquiries of an employee as to whether such employee is an individual with a disability." D. 1 ¶ 24. Although it appears that the First Circuit has not specifically addressed this issue, other Circuits have concluded that a plaintiff bringing a case pursuant to 42 U.S.C. § 12112(d)(4) is not required to establish that they have a disability.[1] See Roe, 124 F. 3d 1221, 1229; Cossette v. Minn. Power & Light, 188 F. 3d 964, 969 (8th Cir. 1999); Fredenburg v. Contra Costa Cty. Dept. of Health Serv., 172 F.3d 1176, 1182 (9th Cir. 1999); see also Karraker v. Rent-A-Center, Inc., 239 F. Supp. 2d 828, 834 (C.D. Ill. 2003) (discussing circuit cases that have determined that plaintiffs need not be disabled to challenge the employee medical examination provisions of the ADA). These courts have observed that the language in 42 U.S.C. § 12112(d)(2-4) is broader than that in the general provision under § 12112(a), referring to all job applicants and employees rather than just qualified individuals with disabilities. See Karraker, 239 F. Supp. 2d at 835. Further, these

---

[1] Neither Armstrong v. Turner Indus., 950 F.Supp. 162 (M. D. La. 1996) nor Varnagis v. City of Chicago, No. 96 C 6304, 1997 WL 361150 (N.D. Ill. June 20, 1997), both cited by BPD to support its argument that Plaintiffs must establish that they have a disability, D. 11 at 12-13, warrant a different conclusion. In Armstrong, the court analyzed a claim brought by a job applicant under a different subsection of the ADA and determined that the job applicant was required to establish that he had a disability to defeat summary judgment. Armstrong, 950 F.Supp. at 165-66. On appeal, the Fifth Circuit did not discuss this issue and affirmed the decision based on plaintiff's failure to establish that he had suffered an injury. Armstrong v. Turner Indus., 141 F.3d 554, 560 (5th Cir. 1998), but distinguished the case from Roe, where a current employee had standing to challenge her employer's policy because she faced imminent injury if she refused to comply with the policy. Id. at 558 n.10, 564 n.26 (citing Roe, 124 F.3d at 1229). In Varnagis, the court analyzed the ADA claims of job applicants seeking positions as Chicago police officers and required a showing of disability to bring an ADA claim. Varnagis, 1997 WL 361150 at *3. Neither case involved current employees challenging employment policies that they still remain subject to as Plaintiffs do in this case.

courts have noted that it would be inconsistent with the purpose of the medical examination and inquiry prohibitions to require that an employee demonstrate that he or she has a disability before challenging an employer's inquiry into whether the individual has a disability. See id. (noting that circuit courts have stated that "it makes little sense to require an employee to demonstrate that he has a disability to prevent his employer from inquiring as to whether or not he has a disability") (quoting Roe, 124 F.3d 1229). This Court agrees that this reasoning is consistent with the language and purpose of 42 U.S.C. § 12112(d)(4). Accordingly, Plaintiffs are not required to establish that they have a disability to challenge BPD's medical and psychological examination policy under 42 U.S.C. § 12112(d).

### 3. *Business Necessity*

BPD also argues that Plaintiffs' ADA claim fails because Plaintiffs have not alleged that the medical and psychological examinations are not job-related and that they are not consistent with business necessity. D. 11 at 13-14 (citing 29 C.F.R. § 1630.14(c), which provides that "[a] covered entity may require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity"). Plaintiffs, however, do not bear the burden to establish that the examinations are job-related and consistent with business necessity. Rather, BPD bears the burden of proving that the challenged examinations do not violate the ADA because they are sufficiently job-related and consistent with business necessity. E.g., Painter v. Ill. DOT, 715 Fed. Appx. 538, 540 (7th Cir. 2017) (noting that "[e]mployers bear the 'quite high' burden of establishing that compelled medical examinations are consistent with business necessity") (quoting Wright v. Ill. Dep't of Children & Family Servs., 798 F.3d 513, 523 (7th Cir. 2015)); Bates v. Dura Auto. Sys., Inc., 767 F.3d 566, 581 (6th Cir. 2014) (stating that "[t]he employer shoulders the burden of proving the job relatedness and business necessity justifying a medical

examination or disability-related inquiry") (citing Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007)); Brownfield v. City of Yakima, 612 F.3d 1140, 1146 (9th Cir. 2010) (stating that "[t]he employer bears the burden of demonstrating business necessity").

Even if Plaintiffs bore the burden, the complaint sufficiently alleges that the examinations were not job-related and were not consistent with business necessity. Plaintiffs allege that BPD requires physical and psychological examinations of all individuals who have been on leave for over six months "regardless of the reason for the officer's absence." D. 1 ¶ 20. Plaintiffs further allege that, because both LaCroix and Payne-Callender were on leave as the result of physical injuries, the psychological examinations that they were required to undergo prior to returning to work "did not relate to their recovery or their ability to perform job-relation functions." D. 1 ¶ 25. Plaintiffs have sufficiently alleged their ADA claim and, therefore, the Court denies BPD's motion to dismiss as to Claim I.

### B.     State Law Claims

Plaintiffs bring two claims under Mass. Gen L. c. 151B, § 4. In Count II, Plaintiffs allege that BPD's examination policy has violated Mass. Gen. L. c. 151B, § 4(16), which prohibits employers from "dismiss[ing] from employment or refus[ing] to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person." D. 1 ¶¶ 27-29. In Count III, Plaintiffs allege that the examinations also violate Mass. Gen. L. c. 151B, § 4(19), which prohibits an employer from "question[ing] a person about their genetic information or genetic information concerning their family members." D. 1 ¶¶ 30, 31. As both parties acknowledge, "Chapter 151B is considered the 'Massachusetts analogue' to the [ADA]." D. 11 at 16 (citing Sensing v. Outback Steakhouse of Fla., LLC, 575 F.3d 145, 153 (1st Cir. 2009); D. 14 at 18-19. As such, "[t]he Supreme Judicial

Court of Massachusetts . . . has indicated that federal case law construing the ADA should be followed in interpreting the Massachusetts disability law." Sensing, 575 F. 3d at 153-54 (citing Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, P.C., 258 F.3d 30, 32 n.1 (1st Cir. 2001)); see also Audette v. Town of Plymouth, 858 F.3d 13, 20 n.8 (1st Cir. 2017) (stating that "Massachusetts's handicap discrimination statute, Massachusetts General Laws chapter 151B, § 4, is 'nearly identical' to the ADA" and thus "we analyze the statute in exactly the same manner as the ADA") (quoting Mulloy v. Acushnet Co., 460 F.3d 141, 154 (1st Cir. 2006)).

Noting this, BPD states that its argument regarding Plaintiffs' requirement to show disability under the ADA applies to warrant dismissal of Plaintiffs' claim pursuant to Mass. Gen. L. c. 151B, § 4(16). Having found BPD's arguments for dismissal of the federal ADA claim unpersuasive, this Court declines to apply those arguments to dismissal of Plaintiffs' analogous state law claim. BPD further claims that its argument regarding lack of injury under the ADA applies in equal force to require dismissal of Plaintiffs' genetic information claim under Mass. Gen. L. c. 151B, § 4(19). D. 11 at 16. For the same reasons related to the ADA claim, this argument is unavailing. Plaintiffs, as current employees of BPD and unions representing current employees of BPD, continue to be subject to the BPD examination policy that they challenge here. As such, there is an ongoing possibility that they will be required to undergo similar examinations in the future. Further, Plaintiffs have alleged that the required psychological examinations may require current employees to disclose genetic information in violation of Mass. Gen. L. c. 151B, § 4(19). D. 1 ¶ 31. Accordingly, Plaintiffs have sufficiently stated a claim pursuant to Mass. Gen L. c. 151B, § 4(19) and the Court denies BPD's motion to dismiss as to Plaintiffs' state law claims (Counts II and III).

**VI.     Conclusion**

For the foregoing reasons, the Court DENIES BPD's motion to dismiss, D. 10.

**So Ordered.**

/s/ Denise J. Casper  
United States District Judge