## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES LACROIX, RENEE PAYNE-CALLENDER, THE BOSTON  POLICE PATROLMEN'S ASSOCIATION, THE BOSTON POLICE DETECTIVES BENEVOLENT SOCIETY, and THE BOSTON POLICE SUPERIOR OFFICERS FEDERATION,<br>　　　　Plaintiffs,<br><br>　　　v.<br><br>THE BOSTON POLICE DEPARTMENT,<br>　　　　Defendant. | Civil Action No. 1:19-CV-11463-DPW |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### I.    INTRODUCTION

Pursuant to Fed.R.Civ.Pro. 56, Plaintiffs James LaCroix, Renee Payne-Callender, Boston Police Patrolmen's Association ("BPPA"), Boston Police Detectives Benevolent Society ("BPDBS"), and Boston Police Superior Officers Federation ("BPSOF"), file this memorandum of law in support of their motion for summary judgment.  As shown herein, Defendant Boston Police Department's ("BPD") policy of uniformly subjecting officers to physical and psychological examinations as a condition of returning from any leave violates the American with Disabilities Act's prohibition on examinations of current employees, 42 U.S.C. § 12112(d)(4).  The BPD's claim that such examinations are permissible under the statute's narrow exception for examinations that are "job-related and consistent with business necessity" fails.  The BPD can point to no articulable justification for blanket examinations for officers.  Absent a belief that an officer poses a risk and demonstrable

evidence that the officer is potentially unfit, a blanket policy of requiring all officers to undergo examinations cannot stand.

This case is squarely on point with the decision in <u>Port Authority Police Benevolent Association, Inc. v. Port Authority of New York and New Jersey</u>, 283 F.Supp.3d 72 (S.D.N.Y. 2017)("<u>Port Authority PBA</u>"), where the Court found the employer Port Authority's policy of annual physical examinations for all police officers, and periodic examinations of all officers on sick leave, to be unlawful under 42 U.S.C. § 12112(d)(4), in that the Port Authority could not demonstrate a business necessity for the examinations.  As in that case, summary judgement for the plaintiffs is appropriate.  The Court should grant plaintiffs summary judgement on Count I of the complaint (alleging a violation of 42 U.S.C. § 12112(d)(4)) and should issue an injunction against the continued use of the BPD's examination policy.

## II.   <u>CONCISE STATEMENT OF MATERIAL FACTS NOT IN DISPUTE (LR 56.1)</u>

The BPD maintains a policy requiring that all officers on leave for over three months submit to a physical examination, and all officers on leave for over six months submit to a psychological examination, prior to being permitted to return to work.  The BPD policy applies regardless of the reason that the officer was on leave; all officers, whether on medical, injury, personal, military, or other leave, are subjected to the examinations.  As the BPD stated in a December 20, 2018 letter from BPD Deputy Superintendent Steven Whitman to BPPA Counsel:

> Our consistent practice is that, prior to returning to full duty, Officers must meet with Dr. Affeln [then the BPD's occupational physician] if they have been absent for duty for three or more months, and both Dr. Brown [the BPD psychologist] and Dr. Affeln if they have been absent for six or more months.

12/20/18 Letter from Whitman, attached hereto as Exhibit 1.

Plaintiff James LaCroix is a Boston Police Patrol Officer who suffered a work-related injury.  Prior to being allowed to return to duty, LaCroix was ordered to undergo a psychological examination by Dr. Brown.  During the examination, LaCroix asked Dr. Brown if anyone at the Department had raised concerns about his mental health.  Brown answered not to his knowledge.  Plaintiff James LaCroix's Answers to Interrogatories, Answer #7, page 5-6, attached as Exhibit 2.

Plaintiff Renee Payne-Callender is a Boston Police Detective who suffered a work-related injury.  Prior to being allowed to return to duty, she was ordered to submit to a psychological examination by Dr. Brown.  During the actual examination, she asked Dr. Brown why she was being ordered to be examined.  He stated that she was being examined due to the length of time that she'd been out of work.  She specifically asked him if anyone had raised a concern with her mental fitness.  He replied, "No, no such concerns about you." Plaintiff Renee Payne-Callender's Answers to Interrogatories, Answer #6, page 5, attached as Exhibit 3.

The BPD's stated justification for its examination policy is that officers on leave are not observed on a daily basis and could therefore somehow possibly have developed an issue that could possibly render them unfit.  The BPD points to no specific concern regarding any officer.  In response to an interrogatory, the BPD stated:

> The RTW exams practice is related to a business necessity because in the normal course, officers are reporting to work regularly and their supervisors and peers are able to observe their behavior. Once an officer has been out of work for an extended period of time, however, the Department has been deprived of the ability to observe day-to-day behaviors to ensure that an officer is fit to carry a firearm, mentally and physically. The Department has no way of knowing what is going on with an officer when he or she is out of work and must ensure that each officer is fit and able to perform the duties of the job upon returning to work from a prolonged absence. Where officers carry service firearms and are not required to have a license to carry, the

> Police Commissioner has a managerial prerogative to ensure each and every
> officer is fit to carry a weapon for the safety of all employees, as well as the
> public. The job of police officer is one that is inherently high risk, as
> evidenced by the fact that drug testing is part of the Collective Bargaining
> Agreement. The Department has a duty to protect its employees and the
> public where officers carry firearms.

Defendant BPD Answers to Interrogatories, Answer #13, page 4, attached as Exhibit 4.

III.   **ARGUMENT**

    A.   **THE STANDARD APPLICABLE TO A MOTION FOR SUMMARY JUDGMENT**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Once the moving party demonstrates the "absence of evidence to support the nonmoving party's case,' the burden of production shifts to the nonmovant." Dow v. United Bhd. of Carpenters, 1 F.3d 56, 58 (1st Cir. 1993) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).  The nonmoving party must then "affirmatively point to specific facts that demonstrate the existence of an authentic dispute." McCarthy v. N.W. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995).  The court must:

> view the entire record in the light most hospitable to the party opposing
> summary judgment, indulging all reasonable inferences in that party's favor,'
> but paying no heed to 'conclusory allegations, improbable inferences, [or]
> unsupported speculation.' If no genuine issue of material fact emerges, then
> the motion for summary judgment may be granted.

Id. (citations omitted). For issues on which the nonmoving party bears the ultimate burden of proof, he or she "must present definite, competent evidence to rebut the motion." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991).  The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial."  Id.

In this case, there is no genuine need for trial – the BPD concedes that it requires all officers to undergo medical and psychological examinations prior to returning from leave, regardless of the reason for the leave.[1]  The BPD offers no justification or evidence for its claim that such examinations are narrowly tailored to meet a business necessity.  The BPD cannot establish that its exams are "job-related and consistent with business necessity," and they therefore violate the ADA.  Viewing the entire record in the light most favorable to the nonmoving party and indulging all reasonable inferences and disputed facts in the BPD's, the plaintiffs are entitled to judgment as a matter of law on Count I of their complaint.  O'Connor v. Steeves, 994 F.2d 905, 906-907 (1st Cir. 1993).

**B.  THE BPD POLICY OF REQUIRING ALL OFFICERS TO SUBMIT TO PHYSICAL AND/OR PSYCHOLOGICAL EXAMINATIONS AS A CONDITION OF RETURNING TO DUTY FROM A LEAVE VIOLATES THE ADA.**

In addition to prohibiting workplace discrimination on the basis of disability, the Americans with Disability Act (ADA) also generally prohibits employers from subjecting job applicants and employees to medical examinations and inquiries.  With regards to the treatment of current employees, 42 U.S.C. § 12112(d)(4) provides:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examinations or inquiry is shown to be job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4)(A).  It is therefore illegal to require an employee to undergo an examination or medical inquiry, with an exception where an employer can prove that the examination or inquiry is job related and necessary.

---

[1] The plaintiffs do not challenge any BPD policy requiring that officers suffering from a work-related injury may be subjected to an examination to determine that the workplace injury is resolved.  It is the BPD policy that requires physical or psychiatric exams unrelated to workplace injuries that is illegal.

Where, as here, an employer seeks to subject an entire class of employees (those seeking to return from leave) to examination or inquiry, it must meet certain criteria to qualify for the business necessity exemption.  In Port Authority PBA, the court delineated the standard as follows:

> [T]o satisfy the business necessity exception for requiring annual medical examinations and fitness-for-duty examinations, the Port Authority must show (1) that the asserted purpose for the policy is vital to its business; (2) the class of employees that is subjected to the policies is defined based on grounds consistent with business necessity; and (3) that the policy genuinely serves the business necessity and that the examination is no broader or more intrusive than necessary.

Port Authority PBA, 283 F.Supp.3d at 82.  The court also properly noted, "[t]he Port Authority bears the burden of establishing business necessity." Port Authority PBA, 283 F.Supp.3d at 89.  In this case, the BPD cannot meet this standard.

For purposes of this summary judgement, the plaintiffs will assume, *arguendo*, that the BPD has a vital business interest in the physical and psychological fitness of all Boston police officers.  But the examination of all officers returning from a leave, regardless of the reason for the leave, cannot meet either the second or third standard above.  The defendant cannot establish that officers on leave are more likely to be physically or psychologically unfit due to the leave.  The class of officers subject to the examinations is not "defined based on grounds consistent with business necessity."  Similarly, the policy is expansively broad – all officers are subject to the examinations, regardless of any claim of job relatedness.  Significantly, both plaintiffs LaCroix and Payne-Callender were told that there was no concern regarding their psychological fitness, yet they were still subjected to a psychological examination.

Port Authority PBA involved the Port Authority Police Department's right to require examinations of its police officers.  The officers' union brought the case despite the fact that "it appears that no Port Authority police officer has been discharged as a result of failing the annual medical examinations." Port Authority PBA, 283 F.Supp.3d at 79.  In the case, the court examined three specific types of medical examinations and inquiries required by that employer, 1) an annual medical examination of all employees; 2) fitness for duty examinations specific to an officer's injuries for officers with work related injuries ("workers' compensation examinations"); and 3) fitness for duty examinations for officers on extended sick leave for non-work-related injuries.  The Court upheld the right of the employer to conduct the worker's compensation examinations, "this Court concludes that these examinations actually contribute to the Port Authority's authorization of medical treatment by allowing it to ascertain the officer's eligibility for workers' compensation without being broader than necessary to diagnose the condition." Port Authority PBA, 283 F.Supp.3d at 87.[2]

The court found that the other two types of examinations violate the ADA.  With regards to the annual examinations, the court agreed that the employer had a business necessity in "ensuring that its police officers can adequately safeguard its facilities and the safety of those who patronize them."  Port Authority PBA, 283 F.Supp.3d at 83.  But the court found that subjecting all officers to annual exams was not a reasonable inquiry:

> However, the Port Authority's business necessity defense falls short because it fails to demonstrate that it has a reasonable basis to suspect that the class subject to the mandatory comprehensive annual medical examinations presents a safety risk or that requiring the examinations is *a "reasonably effective method" of decreasing that risk that is "no broader or more*

---

[2]     Again, the plaintiffs do not challenge the BPD's requirement that they be examined relative to their specific work-related injuries.

> ***intrusive than necessary."***…. While such an examination may be reasonably
> effective in ferreting out dormant conditions, including those that might
> ultimately affect an officer's job performance, the annual medical
> examination is "broader [and] more intrusive than necessary" to achieve this
> purpose—especially in the absence of some reason to doubt the class's
> ability to perform the job.

Port Authority PBA, 283 F.Supp.3d at 83-85 (citations omitted)(emphasis added).

Similarly, with regards to requiring fitness for duty examinations for all officers who
were out of work on sick leave, the Court found that the Port Authority failed to prove
business necessity.

> [T]he Port Authority's business necessity defense is scuttled by its failure to
> demonstrate that it has reasonably defined the class affected by this policy.
> Specifically, the Port Authority does not offer any evidence showing that
> police officers who have been out on sick leave for more than five days would
> pose a safety risk or be unable to discharge their responsibilities when they
> return to work.

Port Authority PBA, 283 F.Supp.3d at 88.

The findings in Port Authority PBA are fully applicable here.  Here, the BPD requires
all officers out on leave for more than three months to undergo a physical examination.
They offer no reason to suggest that officers on leave "would pose a safety risk or be unable
to discharge their responsibilities when they return to work."  Similarly, the BPD offers no
suggestion that officers out for more than six months are somehow more likely to be
suffering from a psychological condition that would render them unfit than their working
brothers and sisters.  Here, LaCroix and Payne-Callender were both subjected to
psychological examinations where the BPD had no basis for concern regarding their
psychological fitness.  The examinations, and the BPD policy requiring them, therefore
violate the ADA.

One of the earliest, and most followed, cases challenging unlawful policies regarding class examinations of employees is Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221 (10th Cir. 1997).  In Roe, plaintiff (using a pseudonym to protect her identity), challenged her employer's implementation of a policy requiring all employees to disclose all prescription medications they were taking.  Roe refused to sign a consent form regarding the policy, instead instituting suit arguing that the policy violated 42 U.S.C. § 12112(d)(4).  The District Court found that it did, but declined to issue an injunction against the policy, which the employer had voluntarily temporarily suspended.  Roe v. Cheyenne Mountain Conference Resort, 920 F.Supp. 1153 (D. Colo., 1996).  On appeal, the employer argued that Roe lacked standing, whereas Roe argued that injunction was proper. The Tenth Circuit found that Roe did have standing, and further found injunctive relief should be granted.

> The power to use injunctive relief to enforce the provisions of the ADA is granted by section 107 of the Act, 42 U.S.C. § 12117(a), which provides that the "powers, remedies, and procedures" of Title VII of the Civil Rights Act of 1964 apply under the Act.  Injunctive relief in Title VII cases is authorized when the court finds that the defendant "has intentionally engaged in or is intentionally engaging in an unlawful employment practice...." 42 U.S.C. § 2000e–5(g)...  Congress' decision to incorporate in the ADA the remedies and procedures of Title VII cases is a clear indication, we think, that the statutory intent requirement for injunctive relief should be applied in harmony in cases under the two acts.
>
> ***
>
> The First Circuit has held that injunctive relief should be upheld "because it flows ineluctably" from a ruling that a challenged policy violates Title VII. E.E.O.C. v. Steamship Clerks Union, Local 1066, 48 F.3d 594, 608 n. 16 (1st Cir.), cert. denied, 516 U.S. 814, 116 S.Ct. 65, 133 L.Ed.2d 27 (1995).  We hold that it was an abuse of discretion to deny an injunction.

Roe, 124 F.3d at 1230-31.

Roe is fully applicable to the case at hand.  As in Roe, the plaintiffs here challenge an unlawful policy under 42 U.S.C. § 12112(d)(4).  They seek an injunction against the future application of the BPD's unlawful policy of subjecting officers to examination in order to return from leave.  The Court should grant plaintiffs summary judgment on Count I of their complaint and should enjoin the BPD from future use of its examination policy.

**C.   THE BPD'S STATED JUSTIFICATION FOR THE EXAMINATIONS FAILS AS A MATTER OF LAW TO MEET NARROW BUSINESS NECESSITY EXEMPTION TO THE PROHIBITION ON EMPLOYEE EXAMINATIONS.**

The BPD's asserted justification for requiring that all employees be physically and psychologically examined before returning from a leave of absence is that the employees have been away from the workplace, and their supervisors have not been observing their fitness.  This justification fails to meet the requirements of a valid business necessity.

The BPD states:

The RTW exams practice is related to a business necessity because in the normal course, officers are reporting to work regularly and their supervisors and peers are able to observe their behavior. Once an officer has been out of work for an extended period of time, however, the Department has been deprived of the ability to observe day-to-day behaviors to ensure that an officer is fit to carry a firearm, mentally and physically. The Department has no way of knowing what is going on with an officer when he or she is out of work, and must ensure that each officer is fit and able to perform the duties of the job upon returning to work from a prolonged absence. Where officers carry service firearms and are not required to have a license to carry, the Police Commissioner has a managerial prerogative to ensure each and every officer is fit to carry a weapon for the safety of all employees, as well as the public.

The plaintiffs do not dispute that the BPD has a need "to ensure each and every officer is fit to carry a weapon."  This does not mean, however, that an entire class of officers can be subjected to examinations.  By the BPD's logic, officers could be sent for psychological screenings after a vacation, or even after their days off.  This is illogical.

Again, the BPD must establish that the class of officers subjected to the exam – ALL officers on leave for a set period of time – is proper to address its legitimate concern regarding its business need to know that officers are fit.  It offers nothing to justify the class.  In addition, it must demonstrate that the class "is no broader or more intrusive than necessary."  Again, it cannot point to any basis for concern with the fitness of officers, other than the fact that they have been absent.  This is simply not sufficient to meet the business necessity exemption.

Significantly, the BPD points to no scientific evidence or any evidence at all for that matter, to suggest that officers who are away from work are more likely to become unfit for duty.  As with <u>Port Authority</u>, the BPD "does not offer any evidence showing that police officers who have been out on sick leave for more than [a set period of time] pose a safety risk or be unable to discharge their responsibilities when they return to work."  <u>Port Authority PBA</u>, 283 F.Supp.3d at 88.  The Defendant's mere assertion that an officer who has been on leave could have an issue with fitness for duty is simply insufficient, as a matter of law, to justify the blanket policy of examinations.

The BPD does not and cannot allege that officers on leave are more likely than officers on duty to develop physical or psychological issues that would render them unfit for duty.  Police work is inherently stressful and subjects ON DUTY officers to a myriad of dangers and stressors.  By contrast, officers who are on leave from duty are not subjected to the stressful policing experiences that could lead to concerns about their mental fitness.  Nonetheless, the BPD does not seek to only examine officers of whom it has a reasonable concern regarding fitness.  It subjects ALL officers to examination.  This policy is overbroad.

The BPD's stated justification for the examinations, that officers have not been under daily observation by their supervisors and may therefore be medically and psychologically examined by doctors, is also not logical.  The BPD does not claim that on duty officers are regularly observed by doctors while they were on duty (and a policy that requires them to be examined regularly would violate 42 U.S.C. § 12112(d)(4)).  Instead, the asserted justification is that peers and supervisors have not observed the officer while on leave daily.  Based on this purported concern, the proper response would be for officers who return from leave to be observed regularly by their supervisors.  Examinations by doctors are intrusive and illegal under the ADA.  An abstract concern regarding daily observation (again, without any claim of actual evidence of possible impairment) cannot be transformed into a business necessity justifying an exemption to the ADA's prohibition on subjecting employees to examinations.

The BPD's legitimate concern regarding the fitness of its officers can be addressed in a legal fashion by limiting examinations to officers who show signs of not being fit for duty. If an officer returns from a leave of absence and his or her superiors or peers report that the officer appears to be unfit, then the BPD can determine if there is a proper and legitimate justification for requiring that officer to undergo a fitness for duty examination. Courts have found that officers who are exhibiting signs of being unfit may be ordered to undergo an examination.  *See* Pamon v. Board of Trustees of University of Illinois, 483 Fed. Appx. 296, 26 A.D. Cas. (BNA) 795 (7th Cir. 2012)(functional capacity exam of police officer returning to work following stroke permitted); Coffman v. Indianapolis Fire Dept., 619 F. Supp. 2d 582 (S.D. Ind. 2008)(order to undergo psychological examination permissible

where firefighter's behavior and competence was legitimately raised by other employees and outside individuals).

The BPD's claim of business necessity must be rejected because its policy is not narrowly tailored to address the stated business need.  Their claim that the exemptions should be permitted under the business necessity exception must be rejected.

## IV.  CONCLUSION

The BPD policy of requiring physical and psychological examinations of officers returning from leave violates 42 U.S.C. § 12112(d)(4).  While Defendant BPD has an interest in ensuring the fitness for duty of officers, its blanket policy requiring all officers to undergo an examination to return from leave is far too broad to fall with the narrow exception to 42 U.S.C. § 12112(d)(4)'s prohibition on examinations of current employees. Plaintiffs should be granted summary judgment on Counts I of their complaint, and an injunction should issue declaring the BPD policy unlawful.

Dated:  May 21, 2021                    Respectfully submitted,

JAMES LaCROIX and BPPA,              RENEE PAYNE-CALLENDER and BPSOF,
By their counsel,                    By their counsel,


_____/s/ Bryan Decker_____     _____/s/ Scott Dunlap_____
Bryan Decker BBO #561247             Scott Dunlap, BBO# 634389
Jennifer Rubin, BBO#684323           Attorney at Law
Decker & Rubin, PC                   89 Access Road, Suite 19
295 Freeport Street                  Norwood, MA 02062
Boston, MA 02122                     (781) 349-8551
(617) 877-1716                       swdesq@comcast.net
bdecker@deckerrubin.com
jrubin@deckerrubin.com

BPDBS,
By its counsel,


_____*/s/ Patrick Bryant*_____
Patrick Bryant, BBO# 65220
Pyle Rome Ehrenberg, PC
12 Liberty Square, 10th Floor
Boston, MA 02109
(617) 723-5500
pbryant@pylerome.com

## CERTIFICATE OF SERVICE

I, Bryan Decker, hereby certify that a true copy of the above document has been served upon counsel for the defendant via this court's electronic filing system.


Dated:  May 21, 2021                    _____*/s/ Bryan Decker*_____
                                         Bryan Decker, Esq.

# Exhibit 1



One Schroeder Plaza, Boston, MA 02120-2014

December 20, 2018

Via Email and USPS

Jennifer Rubin
Decker & Rubin
295 Freeport Street
Dorchester, MA 02122

**RE:    Your letters dated December 13, 2018 and December 19, 2018 concerning Departmental return-to-work procedures**

Dear Attorney Rubin,

I am writing in response to your letters of December 13, 2018 and December 19, 2018 regarding return to work procedures for Officers LaCroix and Savage. The Department does not have a written policy governing when returning Officers must meet with Drs. Affeln and Brown. Our consistent practice is that, prior to returning to full duty, Officers must meet with Dr. Affeln if they have been absent from duty for three or more months, and both Dr. Brown and Dr. Affeln if they have been absent for six or more months. The Department is confident that this practice conforms to all relevant law and regulations.

It is the opinion of the Department's medical unit and the Commissioner, and consistent with the Department's practice, that Officer Savage must meet with Dr. Brown to ensure that she is fit to receive her service weapon and return to full duty. Therefore, the Department will not cancel Officer Savage's appointment.

Respectfully,

Deputy Superintendent Steven Whitman, Commander
Office of Labor Relations

cc:    Superintendent-in-Chief Gregory Long
Superintendent Dennis White
Superintendent John Daley
Chanel Bryant-Alexander

Mayor Martin J. Walsh

# Exhibit 2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES LACROIX, RENEE PAYNE-CALLENDER, THE BOSTON  POLICE PATROLMEN'S ASSOCIATION, THE BOSTON POLICE DETECTIVES BENEVOLENT SOCIETY, and THE BOSTON POLICE SUPERIOR OFFICERS FEDERATION,<br>　　　　Plaintiffs,<br><br>　　　v.<br><br>THE BOSTON POLICE DEPARTMENT,<br>　　　　Defendant. | Civil Action No. 1:19-CV-11463-DPW |

### PLAINTIFF JAMES LACROIX'S ANSWERS TO INTERROGATORIES

Pursuant to Fed.R.Civ.Pro. 33 and Local Rule 33.1, Plaintiff James LaCroix submits the following responses to the Interrogatories submitted by defendant Boston Police Department ("Defendant" or "BPD").

### PRELIMINARY STATEMENT

1.　　Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing.  These responses and objections are made without prejudice to, and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

2.　　By making the accompanying responses and objections to Defendant's requests for documents and interrogatory, Plaintiff does not waive, and hereby expressly reserves, his right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including,

but not limited to, competency, relevancy, materiality, and privilege. Further, Plaintiff makes the responses and objections herein without in any way implying that he considers the requests and interrogatory, and responses to the requests and interrogatory, to be relevant or material to the subject matter of this action.

3.    A response to a document request or interrogatory stating that objections and/or indicating that documents will be produced shall not be deemed or construed that there are, in fact, responsive documents, that Plaintiff performed any of the acts described in the document request, interrogatory, or definitions and/or instructions applicable to the document request or interrogatory, or that Plaintiff acquiesces in the characterization of the conduct or activities contained in the document request, interrogatory, or definitions and/or instructions applicable to the document request or interrogatory.

4.    Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

## GENERAL OBJECTIONS

1.    Plaintiff objects to each instruction, definition, and interrogatory to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

2.    Plaintiff objects to each interrogatory that is overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

3.    Plaintiff objects to each instruction, definition, and interrogatory to the extent that it seeks documents protected from disclosure by the attorney-client privilege,

deliberative process privilege, attorney work product doctrine, or any other applicable privilege. Should any such disclosure by Plaintiff occur, it is inadvertent and shall not constitute a waiver of any privilege.

4.     Plaintiff objects to each instruction, definition, and interrogatory as overbroad and unduly burdensome to the extent it seeks documents or information that are readily or more accessible to Defendant from Defendant's own files, from documents or information in Defendant's possession, or from documents or information that Defendant previously produced to Plaintiff. Responding to such requests and interrogatory would be oppressive, unduly burdensome, and unnecessarily expensive, and the burden of responding to such requests and interrogatory is substantially the same or less for Defendant as for Plaintiff.

5.     Plaintiff incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request. Moreover, Plaintiff does not waive its right to amend his responses.

## **INTERROGATORIES**

Interrogatory No. 1: Please state your:
   a.   Full legal name;
   b.   Your marital status;
   c.   Your date and place of birth;
   d.   Your current residential address.

James H. LaCroix; married; 04/13/1973, Norwood, MA; 4 Paula Lane, Foxborough, MA 02035

Interrogatory No. 2: State the name, address, and telephone number of each person likely to have discoverable information or who has first-hand knowledge relevant to disputed

facts alleged in this case and identify the subject of the information likely to be known by the witness. (See Fed. R. Civ. P. 26(a) (1) (A)).

Objection to this question to the extent it seeks lawyer-client confidential

information.  Subject to that objection:

I discussed being ordered for the examination with then BPPA Vice President Chris

Broderick.      Broderick is now a Sergeant assigned to Area B-3.

**Interrogatory No. 3**:  Describe your educational history. Include the degree or certificate, if any, that you received from each such school, college, or specialized course.

I graduated from Blue Hills Vocational Regional High School in 1992.  I took one

semester of Criminal Justice at Mass Bay Community College in 2007.

**Interrogatory No. 4**:  Describe your employment history since graduating high school including:
  a.   each and every job you held prior to becoming a member of the Boston Police Department;
  b.   name and address of the company for each such job;
  c.   time period you worked for the company for each such job;
  d.   each and every assignment you have had while a member of the Boston Police Department, including timeframes.

U.S. Navy – Active Duty, 1993-2000.

Local 4, Operating Engineers, Heavy Equipment Operator 2001-10/2004

I was hired by the BPD and started the Academy in 10/2004.

I worked at C6, (days for one year, last half 1.5 years) 4/2005-8/2007;
I have worked at C11 since 8/2007, all but 10 days on 1st Half.

**Interrogatory No. 5**:  Please identify all persons with whom you have discussed, either orally or in writing, this action, any of the allegations contained in the MCAD charge and/or the Complaint and Request for Relief, or any fact, event, circumstance, communication, or contention that concerns, forms the basis for, involves, or relates to any such allegations.

I have discussed this case with my wife, with Christopher Broderick (prior to his promotion to Sgt), and with other BPPA officials.  My discussions have been in the context of informing others about the complaint/lawsuit.

Interrogatory No. 6:  State why, with specificity, you believe the psychological examinations were not related to a business necessity or intended to determine ability to perform job-related functions as alleged in Paragraph 25 of your Complaint and Request for Relief. Your answer should include all facts you rely on to make such a claim against Defendant Boston.

Objection to this question to the extent that it seeks Plaintiff's opinion on a question of law.  Subject to that objection:

The psychological examination did not pertain to an actual or perceived inability to perform job related functions. During my examination with Dr. Brown, I asked him why I was being required to undergo a psychological examination, as I had been on injury leave for an injury to my hip and back.  He told me that in the past, the Department had officers returning from military duty in Afghanistan and Iraq undergo a psychological exam due to a concern about "PTSD."  He said that there was a complaint about the fact that only veterans were being examined, so the Department began ordering all officers returning from leaves of more than 6 months to be psychologically examined.

Interrogatory No. 7:  State why, with specificity, you believe return to work medical and psychological examinations tend to require officers to disclose potential handicaps without a valid reason as alleged in Paragraph 28 of your Complaint and Request for Relief. Your answer should include all facts you rely on to make such a claim against Defendant Boston.

Objection to this question to the extent that it seeks plaintiff's opinion on a question of law.  Subject to that objection:

I do not recall all of the questions I was asked at the examination.  I was asked about my emotional state and whether I believed I was ready to return to work.  When I asked Dr.

Brown if anyone at the Department had raised concerns about my mental health, he told me not to his knowledge. Therefore, I do not understand why I was being subjected to a psychological examination. Questions about my emotional and/or mental state could tend to require or permit disclosure of potential handicaps.

<u>Interrogatory No. 8</u>: State why, with specificity, you believe return to work medical and psychological examinations have the potential to require officers to disclose confidential genetic information as alleged in Paragraph 31 of your Complaint and Request for Relief. Your answer should include all facts you rely on to make such a claim against Defendant Boston.

Objection to this question to the extent that it seeks plaintiff's opinion on a question of law. Subject to that objection:

I do not recall all of the questions I was asked at the examination. I was asked about my emotional state and whether I believed I was ready to return to work. When I asked Dr. Brown if anyone at the BPD had raised concerns about my mental health, he told me not to his knowledge. Therefore, I do not understand why I was being subjected to a psychological examination. Questions during a psychological examination that is not based on actual or perceived inability to perform the job could tend to require or permit disclosure of family medical history and/or genetic information protected by law.

<u>Interrogatory No. 9</u>: Please state with specificity if you were asked any questions at your medical or psychological evaluations that sought information about a potential handicap. If so, please state exactly how the questions were phrased and if you were required to answer those question(s).

Objection to this question to the extent that it seeks plaintiff's opinion on a question of law. Subject to that objection:

I do not recall all of the questions I was asked at the examination. I was asked about my emotional state and whether I believed I was ready to return to work. When I asked Dr.

Brown if anyone at the BPD had raised concerns about my mental health, he told me not to his knowledge.  Therefore, I do not understand why I was being subjected to a psychological examination. Questions during a psychological examination that is not based on actual or perceived inability to perform the job could tend to require or permit disclosure of a potential handicap.

Interrogatory No. 10:  Please state with specificity if you were asked any questions at your medical or psychological evaluations that sought confidential genetic information. If so, please state exactly how those questions were phrased and if you were required to answer that question(s).

Objection to this question to the extent that it seeks plaintiff's opinion on a question of law.  Subject to that objection:

I do not recall all of the questions I was asked at the examination.  I was asked about my emotional state and whether I believed I was ready to return to work.  When I asked Dr. Brown if anyone at the BPD had raised concerns about my mental health, he told me not to his knowledge.  Therefore, I do not understand why I was being subjected to a psychological examination.  Questions during a psychological examination that is not based on actual or perceived inability to perform the job could tend to require or permit disclosure of family medical history and/or confidential genetic information.

Interrogatory No. 11:  Please set forth in full and complete detail all statements, communications or conversations, oral or written (excluding attorney client/work product communications), relative to the occurrences set forth in Plaintiffs' Complaint and Request for Relief, by or between you, and:
  a.  The City of Boston, any of its employees, officers or agents, including the dates and the identity of all persons present on each such occasion; and
  b.  any and all witnesses and/or other persons having knowledge of the allegations made in your Complaint and Request for Relief, including the dates and the identity of all persons present on each such occasion. Please include in your description everything you learned about what each person having knowledge of the alleged incident witnessed.

Include the substance of the statement, the name and address of each person to whom the statement was made and the date upon which it was made, the form of the statement (whether oral, in writing, stenographic or otherwise) and the name and address of the person now in possession or custody of the statement.

I communicated with members of the BPD's MIS division regarding the order that I undergo an examination with Dr. Brown.  I attended the examination with Dr. Brown, and answered all questions he put to me.  Following the examination, I discussed it with counsel.  I recall discussing the examination with then BPPA Vice President Chris Broderick.  I may have discussed it with other BPPA officials, but I have no specific recollection.  Any discussions with my wife are protected from disclosure by any marital communications privilege.

Interrogatory No. 12:  Please describe in full and complete detail any damages claimed by you, economic or otherwise, for the events described in the Complaint and Request for Relief and the cause of these damages and please also specify the dollar amount of any such damages and how such damages are calculated.

I am not claiming any financial damages related to the examination.

Interrogatory No. 13:  If, as a result of the occurrences alleged in your Complaint and Request for Relief, you are claiming that you suffered any emotional distress, or symptoms thereof, please describe the same fully, stating their nature, extent, and the date and time when you first noticed such mental distress and if it has since resolved, the date when this occurred. Please include in your answer a description of any and all treatment received for emotional injuries resulting from this incident, including the names and addresses of any medical professionals or other individuals or entities that provided treatment.

I am not claiming any emotional distress damages.

Interrogatory No. 14: Please describe any and all treatment you have ever sought or received for emotional injuries or trauma, mental health, or substance abuse during the period beginning ten years prior to the return to work evaluations described in Plaintiffs' Complaint and Request for Relief up to and including the present date.

None.

<u>Interrogatory No. 15</u>:  Please list and identify all persons whom you intend to call as an expert witness at trial, stating as to each such expert witness:
a. The substance of the facts and opinions to which each expert is expected to testify; and
b. A summary of the grounds for each opinion of each such expert.

Plaintiffs have not yet determined whether they will call an expert witness at trial.

<u>Interrogatory No. 16</u>:  If you have ever been a plaintiff or a defendant in a lawsuit, state the following:
  a. the complete case caption, including any docket or other identifying number, and the forum in which the complaint was lodged;
  b. the nature of the cause of action and a description of the allegations in the Complaint;
  c. the name, address, and telephone number of counsel or representative for each party; and
  d. the final disposition of the case including the date it was resolved.

I do not recall ever being a plaintiff or defendant in a lawsuit.

<u>Interrogatory No. 17</u>:  Set forth the underlying cause for your leave of absence, including identifying your treating providers.

I injured by back and hip in a foot chase while on duty on March 6 2015.  I was seen by a number of doctors during my recovery.  The doctors who treated me were:

Back doctors:
Eugenio Martinez, MD, NE Baptist Hospital
Kevin Bernard, MD, NE Baptist Hospital
Sharon Bassi, MD, NE Baptist Hospital

Hip doctors:
Geoffrey Van Flandern, MD, NE Baptist Hospital
Thomas Wuerz, MD, NE Baptist Hospital

Pain Management:
Andrea Stracciolini, MD, Boston Children's Hospital

PCP:
James Mahoney, MD, Tufts Medical Center, Quincy, MA

## OATH

I do solemnly declare and affirm under the penalties of perjury that the foregoing

Answers to Interrogatories are true and correct to the best of my knowledge, information

and belief.

Dated:  November 18, 2020

James LaCroix

As to objections:

Respectfully submitted,
JAMES LaCROIX,
By his counsel,

Bryan Decker BBO #561247
Jennifer Rubin, BBO#684323
Decker & Rubin, PC
295 Freeport Street
Boston, MA 02122
(617) 877-1716
bdecker@deckerrubin.com
jrubin@deckerrubin.com

## CERTIFICATE OF SERVICE

I, Bryan Decker, hereby certify that a true copy of the above document has been

served upon counsel for the defendant via electronic mail.

Dated:  2/15/2021

Bryan Decker, Esq.

**Exhibit 3**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ | |
| JAMES LACROIX, RENEE PAYNE-CALLENDER, ) | |
| THE BOSTON  POLICE PATROLMEN'S ) | |
| ASSOCIATION, THE BOSTON POLICE ) | |
| DETECTIVES BENEVOLENT SOCIETY, and ) | |
| THE BOSTON POLICE SUPERIOR ) | |
| OFFICERS FEDERATION, ) Civil Action No. 1:19-CV-11463-DPW |
|      Plaintiffs, ) | |
| ) | |
|     v. ) | |
| ) | |
| THE BOSTON POLICE DEPARTMENT, ) | |
|     Defendant. ) | |
| _____) | |

### PLAINTIFF RENEE PAYNE-CALLENDER'S ANSWERS TO INTERROGATORIES

Pursuant to Fed.R.Civ.Pro. 33 and Local Rule 33.1, Plaintiff Renee Payne-Callender submits the following responses to the Interrogatories submitted by defendant Boston Police Department ("Defendant" or "BPD").

### PRELIMINARY STATEMENT

1.      Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing.  These responses and objections are made without prejudice to, and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

2.      By making the accompanying responses and objections to Defendant's requests for documents and interrogatory, Plaintiff does not waive, and hereby expressly reserves, her right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including,

but not limited to, competency, relevancy, materiality, and privilege.  Further, Plaintiff makes the responses and objections herein without in any way implying that she considers the requests and interrogatory, and responses to the requests and interrogatory, to be relevant or material to the subject matter of this action.

3.     A response to a document request or interrogatory stating that objections and/or indicating that documents will be produced shall not be deemed or construed that there are, in fact, responsive documents, that Plaintiff performed any of the acts described in the document request, interrogatory, or definitions and/or instructions applicable to the document request or interrogatory, or that Plaintiff acquiesces in the characterization of the conduct or activities contained in the document request, interrogatory, or definitions and/or instructions applicable to the document request or interrogatory.

4.     Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

**GENERAL OBJECTIONS**

1.     Plaintiff objects to each instruction, definition, and interrogatory to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

2.     Plaintiff objects to each interrogatory that is overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

3.     Plaintiff objects to each instruction, definition, and interrogatory to the extent that it seeks documents protected from disclosure by the attorney-client privilege,

deliberative process privilege, attorney work product doctrine, or any other applicable privilege.  Should any such disclosure by Plaintiff occur, it is inadvertent and shall not constitute a waiver of any privilege.

4.     Plaintiff objects to each instruction, definition, and interrogatory as overbroad and unduly burdensome to the extent it seeks documents or information that are readily or more accessible to Defendant from Defendant's own files, from documents or information in Defendant's possession, or from documents or information that Defendant previously produced to Plaintiff.  Responding to such requests and interrogatory would be oppressive, unduly burdensome, and unnecessarily expensive, and the burden of responding to such requests and interrogatory is substantially the same or less for Defendant as for Plaintiff.

5.     Plaintiff incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request. Moreover, Plaintiff does not waive her right to amend her responses.

## **INTERROGATORIES**

<u>Interrogatory No. 1</u>:  Please state your:
   a.  Full legal name;
   b.  Your marital status;
   c.  Your date and place of birth;
   d.  Your current residential address.

G Renee Payne-Callender; married; DOB 09/08/1962; place of Birth Boston; 300 Ashmont Street, Dorchester, MA 02124


<u>Interrogatory No. 2</u>:  State the name, address, and telephone number of each person likely to have discoverable information or who has first-hand knowledge relevant to disputed

facts alleged in this case and identify the subject of the information likely to be known by the witness. (See Fed. R. Civ. P. 26(a) (1) (A)).

Objection to this question to the extent it seeks lawyer-client confidential

information.  Subject to that objection:

I spoke with BPD Captain Mark Hayes, assigned to the Family Justice Center, about

the order that I undergo a psychological examination prior to my full return to duty.  I also

spoke with someone at the Boston Police Detective's Benevolent Society, possibly Detective

Martin O'Malley, regarding the order.


**Interrogatory No. 3**:  Describe your educational history. Include the degree or certificate, if any, that you received from each such school, college, or specialized course.

I received my B.S. in Criminal Justice from Springfield College in 2000.  I received my

Masters in Criminal Justice from Ana Maria College in 2002.  Please see my resume,

provided in response to the Department's Document requests, for the professional training

I have received.


**Interrogatory No. 4**:  Describe your employment history since graduating high school including:
   a.  each and every job you held prior to becoming a member of the Boston Police Department;
   b.  name and address of the company for each such job;
   c.  time period you worked for the company for each such job;
   d.  each and every assignment you have had while a member of the Boston Police Department, including timeframes.

Please see my resume, provided in response to the Department's Document

requests.


**Interrogatory No. 5**:  Please identify all persons with whom you have discussed, either orally or in writing, this action, any of the allegations contained in the MCAD charge and/or

the Complaint and Request for Relief, or any fact, event, circumstance, communication, or contention that concerns, forms the basis for, involves, or relates to any such allegations.

I have not discussed this action with anyone outside of counsel.

Interrogatory No. 6: State why, with specificity, you believe the psychological examinations were not related to a business necessity or intended to determine ability to perform job-related functions as alleged in Paragraph 25 of your Complaint and Request for Relief. Your answer should include all facts you rely on to make such a claim against Defendant Boston.

Objection to this question to the extent that it seeks Plaintiff's opinion on a question of law. Subject to that objection:

I was first informed that my return to work would be delayed until I underwent a psychological examination by BPD RN Zelma Greenstein. I also discussed it with my MIS Case Manager Sandra Tanner. After RN Greenstein cleared me physically to return to work, I had a conversation with her, Ms. Tanner, and another MIS worker Maria. The conversation took place at the MIS office at BPD. I was told that all officers who are out of work for more than six months had to undergo a psychological exam with Dr. Brown prior to being cleared for full duty. One of the women said that the requirement was originally directed at officers returning from military leave, but that now it was applied to all officers, regardless of the reason for the leave. RN Greenstein told me that I was physically cleared, but that I could not get cleared to carry a weapon until I was cleared by Dr. Brown.

During the actual examination, I asked Dr. Brown why I was being ordered to be examined. I told him I was confused as to why I was there. He stated that I was being examined due to the length of time that I'd been out of work. I specifically asked him if anyone had raised a concern with my mental fitness, and if so, why didn't anyone ask while I was out. He replied, "No, no such concerns about you."

<u>Interrogatory No. 7</u>:  State why, with specificity, you believe return to work medical and psychological examinations tend to require officers to disclose potential handicaps without a valid reason as alleged in Paragraph 28 of your Complaint and Request for Relief. Your answer should include all facts you rely on to make such a claim against Defendant Boston.

Objection to this question to the extent that it seeks plaintiff's opinion on a question of law.  Subject to that objection:

I do not recall all of the questions I was asked at the examination.  I do recall being asked about how my injury had impacted me.  I was also asked about my emotional state and whether I believed I was ready to return to work.  When I asked Dr. Brown if anyone at the Department had raised concerns about my mental health, he told me "no."  Therefore, I do not understand why I was being subjected to a psychological examination. Questions about my emotional and/or mental state could tend to require or permit disclosure of potential handicaps.

<u>Interrogatory No. 8</u>:  State why, with specificity, you believe return to work medical and psychological examinations have the potential to require officers to disclose confidential genetic information as alleged in Paragraph 31 of your Complaint and Request for Relief. Your answer should include all facts you rely on to make such a claim against Defendant Boston.

Objection to this question to the extent that it seeks plaintiff's opinion on a question of law.  Subject to that objection:

I do not recall all of the questions I was asked at the examination.  I do recall being asked about how my injury had impacted me.  I was also asked about my emotional state and whether I believed I was ready to return to work.  When I asked Dr. Brown if anyone at the Department had raised concerns about my mental health, he told me "no."  Therefore, I do not understand why I was being subjected to a psychological examination.  Questions during a psychological examination that is not based on actual or perceived inability to

perform the job could tend to require or permit disclosure of family medical history and/or genetic information protected by law.

Interrogatory No. 9:  Please state with specificity if you were asked any questions at your medical or psychological evaluations that sought information about a potential handicap. If so, please state exactly how the questions were phrased and if you were required to answer those question(s).

Objection to this question to the extent that it seeks plaintiff's opinion on a question of law.  Subject to that objection:

I do not recall all of the questions I was asked at the examination.  I do recall being asked about how my injury had impacted me.  I was also asked about my emotional state and whether I believed I was ready to return to work.  When I asked Dr. Brown if anyone at the Department had raised concerns about my mental health, he told me "no."  Therefore, I do not understand why I was being subjected to a psychological examination. Questions during a psychological examination that is not based on actual or perceived inability to perform the job could tend to require or permit disclosure of a potential handicap.

Interrogatory No. 10:  Please state with specificity if you were asked any questions at your medical or psychological evaluations that sought confidential genetic information. If so, please state exactly how those questions were phrased and if you were required to answer that question(s).

Objection to this question to the extent that it seeks plaintiff's opinion on a question of law.  Subject to that objection:

I do not recall all of the questions I was asked at the examination.  I do recall being asked about how my injury had impacted me.  I was also asked about my emotional state and whether I believed I was ready to return to work.  When I asked Dr. Brown if anyone at the Department had raised concerns about my mental health, he told me "no."  Therefore, I

do not understand why I was being subjected to a psychological examination.  Questions

during a psychological examination that is not based on actual or perceived inability to

perform the job could tend to require or permit disclosure of family medical history and/or

confidential genetic information.


Interrogatory No. 11:  Please set forth in full and complete detail all statements,
communications or conversations, oral or written (excluding attorney client/work product
communications), relative to the occurrences set forth in Plaintiffs' Complaint and Request
for Relief, by or between you, and:
  a.  The City of Boston, any of its employees, officers or agents, including the dates and
      the identity of all persons present on each such occasion; and
  b.  any and all witnesses and/or other persons having knowledge of the allegations
      made in your Complaint and Request for Relief, including the dates and the identity
      of all persons present on each such occasion. Please include in your description
      everything you learned about what each person having knowledge of the alleged
      incident witnessed.
Include the substance of the statement, the name and address of each person to whom the
statement was made and the date upon which it was made, the form of the statement
(whether oral, in writing, stenographic or otherwise) and the name and address of the
person now in possession or custody of the statement.

   Please see my answer to interrogatory 6.  I communicated with members of the

BPD's MIS division, including RN Greenstein, Ms. Tanner, Maria and perhaps others,

regarding the order that I undergo an examination with Dr. Brown.  I also spoke with Dr.

Brown.

   After being informed I would need to see Dr. Brown, but before the examination, I

spoke with Captain Hayes.  I expressed to him that I was upset that my return to full duty

was being delayed, which was denying me the ability to work extra overtime.  Following

the examination, I discussed it with members from my Union, and I discussed it with

counsel.


Interrogatory No. 12:  Please describe in full and complete detail any damages claimed by
you, economic or otherwise, for the events described in the Complaint and Request for

Relief and the cause of these damages and please also specify the dollar amount of any such damages and how such damages are calculated.

My return to full duty was delayed by 13 days, and I was denied the ability to work overtime during those two weeks.  I normally work overtime every week; I would estimate that I work around two overtime shifts per week.  So, I would estimate that I lost the amount I would have been paid for four overtime shifts.  The BDP is in possession of my overtime records, and is in a better position to determine how much overtime I would have worked over those 13 days, and the value of that overtime.

Interrogatory No. 13:  If, as a result of the occurrences alleged in your Complaint and Request for Relief, you are claiming that you suffered any emotional distress, or symptoms thereof, please describe the same fully, stating their nature, extent, and the date and time when you first noticed such mental distress and if it has since resolved, the date when this occurred. Please include in your answer a description of any and all treatment received for emotional injuries resulting from this incident, including the names and addresses of any medical professionals or other individuals or entities that provided treatment.

While I was upset at the delay in my return to full duty, which caused me to be unable to perform overtime, I am not claiming any emotional distress damages in this action based on being ordered to undergo an illegal psychological examination prior to returning to duty.

Interrogatory No. 14: Please describe any and all treatment you have ever sought or received for emotional injuries or trauma, mental health, or substance abuse during the period beginning ten years prior to the return to work evaluations described in Plaintiffs' Complaint and Request for Relief up to and including the present date.

I initiated treatment with Lauren Wisniewski of Renz Counseling, LLC in August 2020 for injuries I suffered at the hands of the Boston Police Department and Lt. Det. Donna Gavin.  These injuries are not related this case.

<u>Interrogatory No. 15</u>:  Please list and identify all persons whom you intend to call as an expert witness at trial, stating as to each such expert witness:
a. The substance of the facts and opinions to which each expert is expected to testify; and
b. A summary of the grounds for each opinion of each such expert.

Plaintiff has not yet determined whether she will call an expert witness at trial.

<u>Interrogatory No. 16</u>:  If you have ever been a plaintiff or a defendant in a lawsuit, state the following:
   a. the complete case caption, including any docket or other identifying number, and the forum in which the complaint was lodged;
   b. the nature of the cause of action and a description of the allegations in the Complaint;
   c. the name, address, and telephone number of counsel or representative for each party; and
   d. the final disposition of the case including the date it was resolved.

I was the defendant in a lawsuit in the early 1990's in my role as a police officer.  I was named by a plaintiff who sued the City, the BPD, and me for alleged excessive force.  I do not recall the plaintiff's name.  I do recall that the case was in Federal Court and was dismissed against me.  I was represented by a City attorney, but I do not remember that person's name.

I was a plaintiff in a divorce proceedings, <u>Holloway v. Holloway</u>, Suffolk County Probate & Family Court, Case No. SU89D1028.  I do not have contact information for the attorneys in that case.

I was a plaintiff in a bankruptcy proceedings, <u>Renee Payne-Callender</u>, U.S. Bankruptcy Court, District of Mass., Case No. 10-12621, discharged in August 2015.  I do not have contact information for the attorneys in that case.

I am currently the plaintiff in a case against the Boston Police Department and Lt. Donna Gavin.  Regarding that case:

a.    <u>G. Renee Payne-Callender v. Donna M. Gavin and City of Boston Police Department</u>, U.S. District Court for the District of Massachusetts, Case No. 1:19-cv-11286-RGC

b.      I filed a complaint alleging ten (10) causes of action, including discrimination on the basis of race, gender and age against Defendants Gavin (Count I) and the City of Boston (Count II), hostile work environment against Defendants Gavin (Count III) and the City of Boston (Count IV), retaliation against Defendants Gavin (Count V) and the City of Boston (Count VI), discrimination by Defendant City of Boston based upon a sham investigation into complaints filed by Plaintiff with the Internal Affairs Division (Count VII) and the Massachusetts Commission Against Discrimination (Count VIII), intentional infliction of emotional distress against both defendants (Count IX), and negligent infliction of emotional distress against both defendants (Count X).  On September 16, 2019, Judge Stearns entered an Order dismissing Counts I, II, and VII through X, as well as dismissing Counts III and IV for conduct prior to September 1, 2017.

c.      Counsel for Plaintiff, G. Renee Payne-Callender: Jeremy Y. Weltman & Adam G. Gutbezahl; Ruberto, Israel & Weiner, P.C., 255 State Street, 7th Floor, Boston, MA 02109; (617) 742-4200

Counsel for Defendant, City of Boston Police Department: John M. Simon & Thomas H. Costello; Stoneham, Chandler & Miller LLP, 99 High Street, Boston, MA 02110; (617) 542-6789

Counsel for Defendant, Donna M. Gavin: Lisa Skehill Maki, Bradford N. Louison, Douglas I. Louison, & Stephen C. Pfaff; Louison, Costello, Condon & Pfaff, LLP, 101 Summer Street, 4th Floor, Boston, MA 02110; (617) 439-0305

d.      This is an ongoing matter without a final disposition.


Interrogatory No. 17:  Set forth the underlying cause for your leave of absence, including identifying your treating providers.

I injured my right Achilles tendon, needing surgery, while on duty on February 28,

2018.  I was treated by Dr. Mark P. Slovenkai, from the Boston Sports and Shoulder Center.

## OATH

I do solemnly declare and affirm under the penalties of perjury that the foregoing

Answers to Interrogatories are true and correct to the best of my knowledge, information

and belief.

Dated:  January 13, 2021

_____
Renee Payne-Calender

As to objections:

Respectfully submitted,
RENEE PAYNE-CALLENDER,
By her counsel,

_____
Bryan Decker BBO #561247
Jennifer Rubin, BBO#684323
Decker & Rubin, PC
295 Freeport Street
Boston, MA 02122
(617) 877-1716
bdecker@deckerrubin.com
jrubin@deckerrubin.com

_____
Scott Dunlap, BBO# 634389
Attorney at Law
89 Access Road, Suite 19
Norwood, MA 02062
(781) 349-8551
swdesq@comcast.net

## CERTIFICATE OF SERVICE

I, Bryan Decker, hereby certify that a true copy of the above document has been

served upon counsel for the defendant via electronic mail.

Dated:  2/15/2021

_____
Bryan Decker, Esq.

**Exhibit 4**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

### CIVIL ACTION NO. 1:19-CV-11463-DPW

**JAMES LACROIX, RENEE PAYNE-CALLENDER, THE BOSTON POLICE PATROLMEN'S ASSOCIATION, THE BOSTON POLICE DETECTIVES BENEVOLENT SOCIETY, and THE BOSTON POLICE SUPERIOR OFFICERS FEDERATION,**
    **Plaintiffs,**

   **v.**

**THE BOSTON POLICE DEPARTMENT,**
    **Defendant.**

## DEFENDANT'S OBJECTIONS AND ANSWERS TO
## PLAINTIFFS' FIRST SET OF INTERROGATORIES

The Defendant, Boston Police Department ("Department"), hereby answers and objects to Plaintiffs' First Set of Interrogatories as follows:

### DEFINITIONS & INSTRUCTIONS

The Department generally objects to the Definitions and Instructions insofar as they are beyond the scope of Fed.R.Civ.Pro. 33 and Local Rule 33.1

### INTERROGATORIES

**Interrogatory No. 1:** Please state the name, business address and the title of the person(s) answering these interrogatories on behalf of the defendants.

**Answer No. 1:** Mary Flaherty, Director of BPD Human Resources, One Schroeder Plaza, Boston, MA.

**Interrogatory No. 2:** Please identify each person you expect to call as a witness or an expert witness at trial and state as to each such person:

  a. his or her name, address, and qualifications;
  b. the subject matters on which each such person is expected to testify;

c. the substance of the facts and opinions to which each such person is expected
to testify; and
d. a summary of the grounds for each such opinion.

**Answer No. 2:** The Department objects on the grounds that this interrogatory is premature. The Department will disclose witnesses and experts as required by Fed. R. Civ. P. Rule 26. and refers Plaintiffs to the Department's Initial Disclosures.

**Interrogatory No. 3:** State whether or not there are any other reports in existence from any particular experts named in answer to Interrogatory No. 2, either written or oral, concerning or related to the subject matter of this lawsuit; if so, identify all such reports and state the present location of such document or, in lieu thereof, attach true copies to your answers to these Interrogatories.

**Response No. 3:** The Department objects on the grounds that this interrogatory is premature. Subject to and notwithstanding the objection, no such reports exist at this time.

**Interrogatory No. 4:** Identify all individuals with knowledge or information that is pertinent to this action and for each individual identified, explain in detail what knowledge or information that individual possesses.

**Response No. 4:** The Department refers Plaintiffs to its Initial Disclosures.

**Interrogatory No. 5:** Please state the name and address of each person whom you intend to call as a witness at trial and indicate those facts to which each such witness is expected to testify.

**Response No. 5:** The Department objects on the grounds that this interrogatory is premature. The Department will disclose witnesses as required by Fed. R. Civ. P. Rule 26. and refers Plaintiff's to the Department's Initial Disclosures.

**Interrogatory No. 6:** Identify all individuals who participated in the preparation of responses to these Interrogatories.

**Response No. 6:** Responses were prepared with assistance from counsel.
Chanel Bryant-Alexander, Director of Occupational Health Services;
Steve Sutliff, Esq., BPD Labor Relations.
The Department reserves the right to amend this response.

**Interrogatory No. 7:** Identify all individuals who participated in the preparation of responses to Plaintiffs' first Set of Document Requests.

2

**Response No. 7:** Responses were prepared with assistance from counsel.
Chanel Bryant-Alexander, Director of Occupational Health Services;
Steve Sutliff, Esq., BPD Labor Relations.
The Department reserves the right to amend this response.


**Interrogatory No. 8:** Please state when the RTW exams practice was implemented.

**Response No. 8:** The RTW exams practice has been in place since approximately 1979.


**Interrogatory No. 9:** Please describe the procedure, policy or practice that applied to RTW and RTW exams prior to the RTW exams practice above.

**Response No. 9:** To be supplemented.


**Interrogatory No. 10:** Please describe any and all physical or psychological exams given to officers returning from leaves of absence of any kind prior to the RTW exams at issue in this case.

**Response No. 10:** To be supplemented.


**Interrogatory No. 11:** Identify all individuals who participated in the development and implementation of the RTW exams practice.

**Response No. 11:** To be supplemented.


**Interrogatory No. 12:** Please state the basis of any claim that the RTW exams practice is job related and necessary.

**Objection to Interrogatory No. 12:** The Defendant objects to this interrogatory on the grounds that it is overly broad, vague, and unduly burdensome. The Defendant also objects on the grounds that this request seeks a legal conclusion, which it is not required to provide. Subject to and notwithstanding this objection:

**Response No. 12:** The RTW exams are job related where all Department officers, regardless of rank, carry a firearm as an essential function of their job. Officers need not have a license to carry, and it is the Police Commissioner's duty to ensure that all officers are fit to carry a firearm and fit to perform his or her duties, both physically and mentally. The Department reserves the right to amend and add to this response.


**Interrogatory No. 13:** Please state the basis for any claim that the RTW exams practice is related to a business necessity.

3

**Objection to Interrogatory No. 13:** The Defendant objects to this interrogatory on the grounds that it is overly broad, vague, and unduly burdensome. The Defendant also objects on the grounds that this request seeks a legal conclusion, which it is not required to provide. Subject to and notwithstanding this objection:

**Response No. 13:** The RTW exams practice is related to a business necessity because in the normal course, officers are reporting to work regularly and their supervisors and peers are able to observe their behavior. Once an officer has been out of work for an extended period of time, however, the Department has been deprived of the ability to observe day-to-day behaviors to ensure that an officer is fit to carry a firearm, mentally and physically. The Department has no way of knowing what is going on with an officer when he or she is out of work, and must ensure that each officer is fit and able to perform the duties of the job upon returning to work from a prolonged absence. Where officers carry service firearms and are not required to have a licence to carry, the Police Commissioner has a managerial prerogative to ensure each and every officer is fit to carry a weapon for the safety of all employees, as well as the public. The job of police officer is one that is inherently high risk, as evidenced by the fact that drug testing is part of the Collective Bargaining Agreement. The Department has a duty to protect its employees and the public where officers carry firearms. The Department reserves the right to amend and add to this response.

**Interrogatory No. 14:** Please state the basis for any claim that the RTW exams practice is no broader or more intrusive than necessary to meet an asserted business necessity.

**Objection to Interrogatory No. 14:** The Defendant objects to this interrogatory on the grounds that it is overly broad, vague, and unduly burdensome. The Defendant also objects on the grounds that this request seeks a legal conclusion, which it is not required to provide. Subject to and notwithstanding this objection:

**Response No. 14:** The Department only requires the RTW exams for those officers who have been out of work for set periods of time that the Department has not seen on a day-to-day basis to ensure the officers are fit and able to perform the essential functions of the police officer job. The Department reserves the right to amend and add to this response.

**Interrogatory No. 15:** Please state whether the RTW exams practice was ever applied only to a subset of employees (e.g., employees returning from military leave) and if yes, the reason(s) why and when it started being applied to all employees for any type of leave.

**Response No. 15:** To be supplemented.

**Interrogatory No. 16:** Identify all sworn police officers who have been subject to the RTW exams practice, the basis for application of the practice, and the results of said RTW exam practice.

**Objection to Interrogatory No. 16:** The Defendant objects to this interrogatory on the grounds that it is overly broad, vague, and unduly burdensome. The Defendant also objects insofar as this

4

request seeks personal identifying information and/or medical information. Subject to and notwithstanding this objection:

**Response No 16:** See documents provided in response to Request for Documents No. 8. Please note that personal identifying information and/or medical information has been redacted pursuant to the above objection.

**Interrogatory No. 17:** Identify all policies, guidelines, texts, memos or other documents providing the standard to determine whether a police officer subject to RTW exams practice is physically cleared to Return to Work.

**Objection to Interrogatory No. 17:** The Defendant objects to this interrogatory on the grounds that it is overly broad, vague, and unduly burdensome. Subject to and notwithstanding this objection:

**Response No. 17:** With regard to sending an officer back to work, the officers must be able to perform their job duties. The MA Initial Hire Medical Standards have a section entitled "MUNICIPAL POLICE OFFICER ESSENTIAL FUNCTIONS." There are also job descriptions for each sworn position. See the documents provided in response to Request for Documents No. 9.

**Interrogatory No. 18:** Identify all policies, guidelines, texts, memos or other documents providing the standard to determine whether a police officer subject to RTW exams practice is mentally cleared to Return to Work.

**Objection to Interrogatory No. 18:** The Defendant objects to this interrogatory on the grounds that it is overly broad, vague, and unduly burdensome. Subject to and notwithstanding this objection:

**Response No. 18:** See the documents provided in response to Request for Documents No. 9.

Respectfully submitted:

DEFENDANT,
BOSTON POLICE DEPARTMENT

By its attorneys:
Eugene L. O'Flaherty
Corporation Counsel


/s/ Winifred B. Gibbons_____
Nicole M. O'Connor (BBO#675535)
Senior Assistant Corporation Counsel
Erika P. Reis (BBO#669930)
Senior Assistant Corporation Counsel
Winifred B. Gibbons (BBO#692724)
Assistant Corporation Counsel
City of Boston Law Department
Boston, MA 02201
(617) 635-4039 (O'Connor)
(617) 635-4031 (Reis)
(671) 635-4030 (Gibbons)
Nicole.OConnor@boston.gov
Erika.Reis@boston.gov
Winifred.Gibbons@boston.gov


## CERTIFICATE OF SERVICE

I, Winifred B. Gibbons, hereby certify that a true copy of the above document has been served upon all parties via electronic mail.

Date:   February 16, 2021                         /s/ Winifred B. Gibbons_____

6

*The undersigned deposes and states that SHE is an employee and representative of the City of Boston and Boston Police Department, and that SHE signs the aforementioned answers for and on behalf of the City of Boston and Boston Police Department and is authorized to do so; that the matters stated in the aforementioned answers are not all within HER personal knowledge and that SHE is informed that there is no officer or employee of said City of Boston or Boston Police Department who has personal knowledge of all such matters; that such facts are stated in said answers which are not within the personal knowledge of the deponent have been assembled by authorized agents, employees, and counsel of said Defendant; and the deponent is informed and believes that the facts states in said answers are true and so states under the pains and penalties of perjury.*

**Signed under the pains and penalties of perjury this 16th day of February, 2021.**

**Name: Mary Flaherty**
**Department: BPD Human Resources**
**Position: Director**

Objections to Interrogatories by:

/s/ Winifred B. Gibbons
Winifred B. Gibbons BBO# 692724
Assistant Corporation Counsel
City of Boston Law Department

7